Harry R. and Joan E. Hoglander v. Commissioner.
Hoglander v. Commissioner
Docket No. 3678-70 SC.
United States Tax Court
T.C. Memo 1971-113; 1971 Tax Ct. Memo LEXIS 221; 30 T.C.M. (CCH) 483; T.C.M. (RIA) 71113; May 18, 1971, Filed Harry R. Hoglander, pro se, Atlantic Ave. , North Hampton, N.H.Edward DeFranceschi, for the respondent. INGOLIA
Memorandum Findings of Fact and Opinion INGOLIA, Commissioner: Respondent determined a deficiency in the petitioners' Federal income tax for the year 1968 of $326.26. Although the statutory notice of deficiency contained several adjustments, the only issue before the Court is whether the petitioners are entitled to exclude sick pay from their income in the amount of $662.50. Since the petitioner-wife, Joan E. Hoglander, is involved herein only because she joined in the filing of the Federal tax return, the word "petitioner" will refer hereinafter to the petitioner-husband, Harry R. Hoglander. Findings of Fact Some of the facts are stipulated and they are so found. The *222 petitioners, husband and wife, were residents of North Hampton, New Hampshire, at the time the petition herein was filed. They filed their Federal income tax return for the year 1968 with the District Director at North Hampton, New Hampshire. During the year 1968 the petitioner was employed as an international airlines pilot by Trans World Airlines. Under his contract with the company, the petitioner was on call for duty seven days a week, although, because of his seniority, he was the holder of a regularly scheduled "bid run". On February 10, 1968, the petitioner dislocated his shoulder in a skiing accident. His next scheduled bid run was to be flown on February 24, 1968. He was unable to fly that run because of his injury and did not return to work until March 14, 1968. The petitioner's contract with Trans World provided for a wage continuation plan should the petitioner be unable to work due to injury or sickness. Under the plan, a pilot holding a bid run is entitled to sick leave "on the first day he is unable to report for scheduled duty". The petitioner was paid $415.24 for his absence from duty from February 24 through March 1 and $647.29 for his absence from duty from March *223 2 through March 12. In 1968 the petitioner received $25,789.40 from Trans World for his services. While the record indicates that the payments were based on an hourly rate, it is unclear as to whether they were paid biweekly, semi-monthly, or monthly. Opinion Section 105(d) of the Internal Revenue Code of 1954 provides that: "(d) Wage Continuation Plans. - Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. The preceding sentence shall not apply to amounts attributable to the first 30 calendar days in such period, if such amounts are at a rate which exceeds 75 percent of the regular weekly rate of wages of the employee (as determined under regulations prescribed by the Secretary or his delegate). If amounts attributable to the first 30 calendar days in such period are at a rate which does not exceed 75 percent of the regular weekly rate of wages of the employee, the first sentence *224 of this subsection (1) shall not apply to the extent that such amounts exceed a weekly rate of $75, and (2) shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of personal injuries or sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid." The respondent agrees that the petitioner has met the basic requirements of section 105(d) in that he was injured, was absent from work because of the injury, and received payments under a wage continuation plan. However, the respondent argues that the petitioner was not absent from work over 30 days and received sick pay at a rate which exceeds 75 percent of the employee's regular weekly rate of wages. We cannot agree with the respondent. He reaches his result by reasoning that 485 because the wage continuation plan does not entitle the petitioner to sick leave pay until he misses the "bid run", the petitioner was not "absent from work" until the date of that run, or *225 February 24, 1968. Then he calculates the petitioner was absent a period of 19 days (February 24 through March 13). By using the 19-day figure to compute the petitioner's weekly rate of sick pay under the regulations (Regs. 1.105-4(e)(6)(ii)(e)) he arrives at a figure of $392.49, which exceeds 75 percent (or $372.64) of the petitioner's weekly rate of wages which he finds to be $496.85. We think it is wrong to equate the method of payment set forth in a wage continuation plan with a determination of when an employee is "absent from work" under section 105(d). It is clear to the Court that the petitioner in this case was injured on February 10, 1968. At that time he was "on call" under his contract with his employer and he was "absent from work" within the meaning of the term as used in section 105(d). His situation ws analogous to that of a member of the Armed Forces who had no assigned duties but stood ready for duty. Regs 1.105-4(a)(5). Since the petitioner was "absent from work" from February 10 until March 14, he was absent from work for a period of 32 days, not 19 days as the respondent asserts. Also, the petitioner's rate of sick pay under the wage continuation plan did not *226 exceed 75 percent of his weekly rate of wages. As we have found, the petitioner received a total of $1,062.53 in sick pay. Under the regulations (Regs. 1.105-4(e)(6) (ii)(e)) this translates to a weekly rate of sick pay of $233.04 (annual rate 52; annual rate = daily rate X 365; daly rate = $1,062.53 32). The weekly rate of sick pay is well below 75 percent of the petitioner's weekly rate of wages of $495.95 ($25,789.40 52), as computed under the applicable regulations. Regs. 1.105-4(e)(5) (iv)(e). In view of the above, the petitioner is entitled to a sick pay exclusion for amounts paid him under the wage continuation plan limited to a $75 per week limitation for the first 30 days and at a rate of $100 per week for any period thereafter. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered under Rule 50.